# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| EQUIPMENT MANAGEMENT TECHNOLOGY, | |
| Plaintiff, | Case No. 2:09-CV-01512-KJD-LRL |
| v. | **ORDER** |
| TUCKER ELECTRONICS COMPANY, *et al*., | |
| Defendants. | |

Presently before the Court is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (#7). Plaintiff filed a response in opposition (#9/10) to which Defendants replied (#11).

I. Jurisdictional Facts and Background

Equipment Management Technology ("EMT") is a Nevada Corporation that distributes aerospace and defense test equipment from its location in Las Vegas, Nevada. In or about September 2008, Defendant Tucker Electronics Company's sole shareholder, Defendant James Tucker, agreed that Tucker Electronics would purchase equipment from EMT and pay within thirty (30) days of delivery. Plaintiff also alleges that James Tucker personally guaranteed the amounts due to EMT for the full cost of equipment delivered to Tucker Electronics. However, Plaintiff does not allege that James Tucker signed any written agreement to guarantee the amounts due.

1    Beginning in September 2008, Tucker Electronics sent purchase orders to EMT in Nevada.

2 After receiving the purchase orders in Nevada, EMT shipped the goods from Nevada to Defendants

3 in Texas.  EMT issued an invoice in Nevada.  Prior to its failure to pay, Tucker Electronics sent

4 payments to EMT in Nevada.  On August 13, 2009, EMT filed the present complaint asserting claims

5 for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment and

6 breach of guaranty.

7 II.  Standard for Motion to Dismiss for Lack of Personal Jurisdiction

8    Since no applicable federal statute governing jurisdiction in this case exists, the court applies

9 the law of the state in which the district court exists.  See Gator.com Corp. v. L.L. Bean, Inc., 341

10 F.3d 1072, 1076 (9th Cir. 2003).  Nevada permits the exercise of personal jurisdiction to the full

11 extent permitted by due process.  See Wells Fargo & Co. v. Wells Fargo Express Co., 556 F.2d 406,

12 415 (9th Cir. 1977).

13    Where defendants move to dismiss a complaint for lack of personal jurisdiction, plaintiffs

14 bear the burden of demonstrating that jurisdiction is appropriate.  See Dole Food Co., Inc. v. Watts

15 303 F.3d 1104, 1108 (9th Cir. 2002).  Where, as here, the motion is based on written materials rather

16 than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional

17 facts."  Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990).  In such cases, "[the court] only

18 inquire[s] into whether [the plaintiff]'s pleadings and affidavits make a prima facie showing of

19 personal jurisdiction."  Caruth v. Int'l Psychoanalytical Ass'n, 59 F.3d 126, 128 (9th Cir. 1995).

20    Although the plaintiff cannot "simply rest on the bare allegations of its complaint," Amba

21 Marketing Systems, Inc. v. Jobar Int'l, Inc., 551 F.2d 784, 787 (9th Cir. 1977), uncontroverted

22 allegations in the complaint must be taken as true.  See AT & T v. Compagnie Bruxelles Lambert, 94

23 F.3d 586, 588 (9th Cir. 1996).  Conflicts between parties over statements contained in affidavits must

24 be resolved in the plaintiff's favor.  See Holland Am. Line Inc. v. Wartsila N.A., Inc., 485 F.3d 450,

25 457 n.5 (9th Cir. 2007).  However, for purposes of personal jurisdiction, a court "may not assume the

26

2

1  truth of allegations in a pleading which are contradicted by affidavit." Data Disc, Inc. v. Sys. Tech.

2  Assocs., 557 F.2d 1280, 1284 (9th Cir. 1977).

3          The assertion of personal jurisdiction satisfies due process when there are "minimum

4  contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional

5  notions of fair play and substantial justice.' " Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)

6  (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).  These requirements "give a degree of

7  predictability to the legal system that allows potential defendants to structure their primary conduct

8  with some minimum assurance as to where that conduct will and will not render them liable to suit."

9  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

10         Personal jurisdiction may be either general or specific.  See Panavision Int'l, L.P. v. Toeppen,

11  141 F.3d 1316, 1320 (9th Cir. 1990).  General jurisdiction exists when there are "substantial" or

12  "continuous and systematic" contacts with the forum state, even if the cause of action is unrelated to

13  those contacts.  Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (citing

14  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415 (1984)).  Specific jurisdiction

15  may be asserted "if the case arises out of certain forum-related acts."  Id. "Whether dealing with

16  specific or general jurisdiction, the touchstone remains 'purposeful availment' ... [to] ensure[ ] that 'a

17  defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or

18  "attenuated" contacts.' " Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d

19  1114, 1123 (9th Cir. 2002) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).

20  III.  Analysis

21         In this action, Plaintiff only argues that Defendants are subject to specific jurisdiction in

22  Nevada.  A district court uses a three-part test to determine whether it may exercise specific

23  jurisdiction over a nonresident defendant: (1) The nonresident defendant must do some act or

24  consummate some transaction with the forum, or perform some act by which he purposefully avails

25  himself of the privilege of conducting activities in the forum, thereby invoking its benefits and

26  protections; (2) the claim must be one which arises out of or results from the defendant's forum-

1   related activities; and (3) the exercise of jurisdiction must be reasonable.  See Cybersell, Inc. v.

2   Cybersell, Inc., 130 F.3d 414, 416 (9th Cir. 1997).  Here, because the Court finds that Plaintiff has

3   failed to establish that Defendants acted or consummated some transaction within the forum or

4   performed acts by which they purposefully availed themselves of the privilege of conducting

5   activities in the forum thereby invoking Nevada's benefits and protections, it is unnecessary for the

6   Court to discuss the second and third prongs of the test.

7         A defendant has purposely availed himself of the benefits of a forum if he has deliberately

8   "engaged in significant activities within a State or has created 'continuing obligations' between

9   himself and the residents of the forum."  Gray & Co. v. Firstenberg Mach. Co., 913 F.2d 758, 760

10  (quoting Burger King, 471 U.S. at 475-76).  Purposeful availment thus requires that the defendant

11  affirmatively act to allow or promote business transactions within the forum state.  Decker Coal Co.

12  v. Commonwealth Edison Co., 805 F.2d 834, 840 (9th Cir. 1986).

13        The Ninth Circuit has distinguished tort and contract cases when applying the purposeful

14  availment prong of the specific jurisdiction test.  See Roth v. Garcia Marquez, 942 F.2d 617, 620-21

15  (9th Cir. 1991).  The mere existence of a contract with a resident of the forum state will be

16  insufficient to satisfy the purposeful availment requirement.  Id. at 621.  Something more is required

17  and the Supreme Court has indicated that courts should look for "continuing relationships and

18  obligations with citizens of [the forum state]."  Id. (citing Burger King, 471 U.S. at 473).  Other

19  factors the court should look for are "prior negotiations and contemplated future consequences, along

20  with the terms of the contract and the parties' actual course of dealing."  Id. at 479.

21        Plaintiff asserts that the following factors demonstrate that Defendants purposefully availed

22  themselves of the privileges of conducting activities within the forum: 1) Defendants agreed to

23  purchase and receive materials purchased from a Nevada company; 2) Defendants sent purchase

24  orders to Nevada; 3) Defendants received goods that were shipped by EMT from Nevada; 4) a Letter

25  of Intent relating to the proposed sale of Tucker Electronics to EMT, which did not govern the

26

4

1   transactions at issue in this action, contained a consent to jurisdiction in Nevada; and 5) Tucker's

2   personal guarantee subjects him to jurisdiction in Nevada.

3          However, the weight of the facts and case law do not support Plaintiff's position.  Here, the

4   terms of the unwritten contract are unclear.  "A 'contract' is 'ordinarily but an intermediate step

5   serving to tie up prior business negotiations with future consequences which themselves are the real

6   object of the business transaction.'"  Stuart v. Spademan, 772 F.2d 1185, 1193 (5th Cir.

7   1985)(quoting Burger King, 471 U.S. at 473).  Here, the alleged contract was for an indeterminate

8   time,  See Plaintiff's Complaint (#1), par. 10 ("a period of time to be determined"), unlike the

9   contract in Burger King which contemplated "a carefully structured 20-year relationship that

10  envisioned continuing and wide-reaching contacts with Burger King in Florida."  Burger King, 471

11  U.S. at 473; see also, Spademan, 772 F.2d at 1194.

12         Additionally, the sending of purchase orders to and shipping of goods from the forum state

13  have failed to establish a defendant's purposeful availment in other cases.  See Hydrokinetics, Inc. v.

14  Alaska Mech. Inc., 700 F.2d 1026, 1028 (5th Cir. 1983), cert. denied, 466 U.S. 962 (1984);

15  Spademan, 772 F.2d at 1193.  Furthermore, the agreement and practice of mailing or making

16  payment in the forum state does not weigh heavily "in the calculus of contacts."  Id. at 1194 (citing

17  Patterson v. Dietze, Inc., 764 F.2d 1145, 1147 (5th Cir. 1984)); Hydrokinetics, 700 F.2d at 1029.

18         Furthermore, Plaintiff relies on the individual Defendant James Tucker's alleged guarantee of

19  the contract to bootstrap both Tucker as an individual and the corporation within the jurisdiction of

20  the Court.  However, Tucker's affidavit asserts that he never personally guaranteed payments under

21  the contract.  Plaintiff never controverted that assertion with its own sworn statement.  It is unlikely

22  that Tucker can be liable for a personal guarantee, since it was not in writing.  See NRS § 111.220

23  (every promise to answer for the debt or default of another void, unless in writing).  Furthermore,

24  though Plaintiff's Opposition (#9) may also be read to suggest that Tucker is liable as the sole

25  shareholder of Tucker Electronics in an alter ego theory, the complaint contains no allegations that

26  Tucker is the alter ego of Tucker Electronics, nor do the affidavits of Plaintiff's officers suggest that.

5

1  Accordingly, Plaintiff has failed to meet its burden.  See Data Disc, 557 F.2d at 1284 (court may not

2  assume truth of allegations in a pleading which are contradicted by affidavit).  Finally, without

3  allegations that Tucker was the alter ego of Tucker Electronics, the actions of Tucker Electronics

4  may not be imputed to Tucker to establish Tucker's contacts with the forum state.  See Forsythe v.

5  Overmyer, 576 F.2d 779, 783-84 (9th Cir. 1978)(abrogated on other grounds by Calder v. Jones, 465

6  U.S. 783 (1984)); Spademan, 772 F.2d at 1196-97.

7          Finally, Plaintiff's strongest argument is the unrelated Letter of Intent, in which Defendant

8  Tucker Electronics agreed to jurisdiction in Nevada for actions arising from the Letter.  However,

9  weighing all of the factors, Plaintiff has failed to make a prima facie showing that Defendants have

10 purposefully availed themselves of the privilege of conducting business in Nevada.  The contract

11 terms are too indeterminate to conclude that the contract envisaged continuing and wide-reaching

12 contacts between Defendants in Texas and Plaintiff in Nevada.  Defendants' contacts with the forum

13 are too limited and attenuated to satisfy the minimum contacts requirement under the Due Process

14 clause.  Because Plaintiff fails to demonstrate that Defendants failed to purposefully avail themselves

15 of the privilege of doing business in Nevada, the Court need not address whether the claim arose

16 from forum related activities or whether the exercise of jurisdiction would be reasonable.  See

17 McGlinchy v. Shell Chem. Co., 845 F.2d 802, 817-18 (9th Cir. 1988).

18 IV.  Conclusion

19         Accordingly, **IT IS HEREBY ORDERED** that  Defendants' Motion to Dismiss for Lack of

20 Personal Jurisdiction (#7) is **GRANTED**.

21         DATED this 13th day of September 2010.

22

23

24                                                    _____

25                                                    Kent J. Dawson
                                                      United States District Judge

26